STEVENS et al. v. THE AMERICAN
VETERAN et al.

DI GIOVANNI v. THE AMERICAN
VETERAN et al.

DI GIOVANNI et al. v. THE AMERICAN
VETERAN et al.

Nos. 1645, 1615, 1618.

United States District Court
D. Massachusetts.

May 25, 1950.

Daniel J. Dempsey, Langan, Lawless & Dempsey, Boston, Mass., for Charles E. Stevens.

Joseph A. Caulfield, Harrigan & Caulfield, Boston, Mass., for Anthony Di Giovanni.

Bingham, Dana, & Gould, Seymour P. Edgerton, Boston, Mass., for libellee.

Kirlin, Campbell, Hickox & Keating, New York City, for claimant and respondent.

Kirlin, Campbell, Hickox & Keating, New York City, Bingham, Dana & Gould, Charles S. Bolster, Boston, Mass., for U. S. Lines.

SWEENEY, Chief Judge.

The above three admiralty libels were heard together and will be covered in one opinion since the only question before me

now is a question of the possible fault of either craft.

### Findings of Fact

Boston Harbor and the approaches thereto from the sea are much used during the summer months by small pleasure craft of all types. On July 24, 1949, in the afternoon of a sunny Sunday, a collision occurred between the Marie S., a 38-foot converted fishing boat with approximately 20 people aboard, and the American Veteran, which is a 10,000 ton freighter.

The owner and operator of the Marie S. was licensed by the Coast Guard to carry passengers. He was a carpenter by trade, taking patrons out fishing for the day as both a hobby and a side business. On the morning of July 24 he took a paying party of sixteen. He also had aboard two guests and an engineer who assisted him in the engine room. Having fished the greater part of the day at several spots, sometime about 4:30 in the afternoon the Marie S. was returning to Boston. Stevens, who was the captain of the Marie S., noticed the American Veteran in his rear and on the same course but about a mile away. At that time the Marie S. was traveling at about 6 knots and the American Veteran was doing about 12½ knots. Shortly thereafter the freighter reduced her speed to "half-speed", which brought her through the water at 8 knots per hour. There were at least 15 or 20 craft of all types using the channel in and out of Boston at that time. Continuing on her course, the freighter passed another large vessel, the Allerton, and proceeded up the channel. The captain of the Allerton later noticed that the American Veteran was in imminent danger of collision with the Marie S. and blew its own whistles to warn the Veteran. This warning came too late to avoid the collision if the warning was heard.

■ After the captain of the Marie S. had first sighted the freighter he paid no further attention to it. He failed to ascertain the speed the freighter was making and, in fact, probably would not have seen the freighter at all before the collision except that one of his passengers called his attention to it just a second or two before the collision. When he saw the freighter bearing down on him he swung his wheel to hard right but was unable to get clear. The bow of the freighter struck the starboard quarter of the Marie S., throwing her into the air and over, and spilling all of her passengers into the water. One woman was drowned and many of the others were injured, besides suffering from immersion and shock. I find that Stevens was at fault in not being aware of the proximity of the freighter until it was too late. He knew the freighter was approaching him, his speed was slow, and he should have occasionally glanced through the rear windows of his pilothouse. Such action on his part would have readily enabled him to sight the approach of the freighter in sufficient time to have blown a warning signal, if he thought the freighter did not see him, or even to have taken some action to avoid the freighter. Any of these alternatives would have prevented the collision and cared for his own safety and that of his passengers.

■ The only other question remaining in the case is whether or not the American Veteran was also at fault. After she picked up her pilot at the Boston Light, she was taken over by the pilot and her speed of 12½ knots per hour was maintained for a short period of time. She was then reduced to half-speed and, shortly thereafter, reached and maintained a speed of 8 knots per hour. This speed was maintained up to a brief moment before the collision. The captain of the American Veteran and the second officer were on the lookout bridge, together with the pilot. The captain was on the port wing of the bridge and had the Marie S. in view on his port bow as he proceeded to pass her. He sounded no signal of his intention to pass in spite of the fact that he was about to leave the bridge to check on the quartermaster's obedience to a command of right rudder which had been given by the pilot. The captain testified that he was absent from the bridge for a period of 10 seconds but the period must have been longer than that, for when he

returned to the bridge the Marie S. was no longer in sight. Anticipating that she was under his bow, he ordered the engines stopped and the crash occurred but a moment later. I think that the captain of the American Veteran is at fault in failing to remain on the bridge and that this contributed to the collision. A speed of 8 knots per hour in the heavy Sunday traffic which existed on the afternoon of the collision could only be justified by every possible precaution. He was bound under the circumstances, if not by the rules of the road, to warn craft of his approach at such a speed. In addition to his failure to sound a warning which under the circumstances I find was needed, he chose to leave the bridge to check on the quartermaster. Even if the negligence of Stevens contributed to the collision, the collision might have been avoided had Stevens been signaled that a passing was about to occur. The failure of the other officers on the bridge to observe the course of the Marie S. in the absence of the captain from the bridge was another possible factor contributing to the collision.

### Conclusions of Law

From the foregoing I conclude and rule that the American Veteran was at fault in that, under its method of operation, its speed was excessive considering the traffic and the conditions in the channel, and that the negligence of the American Veteran was the inducing factor for the collision.

I conclude and rule that the captain of the American Veteran was at fault in failing to maintain a vigilant watch during his progress up the channel.

█ I conclude and rule that the operator of the Marie S. was at fault in failing to observe the approach of the American Veteran until the collision was imminent, and that the rule of divided damages must be applied as between the Marie S. and the American Veteran.

The usual order of reference to a Commissioner for the ascertainment of damages for all parties may be made.